UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH KENT,

         Plaintiff,

      -vs-            08-CV-571-JTC

RICHARD D. THOMAS and
MICHAEL NOTTO,

         Defendants.

---

APPEARANCES: NIRA T. KERMISCH, ESQ., Rochester, New York, Attorney for Plaintiff.

       ANDREW M. CUOMO, Attorney General of the State of New York (GEORGE ZIMMERMAN, Assistant Attorney General, of Counsel), Buffalo, New York, Attorneys for Defendants.

## **INTRODUCTION**

This case arises out of a contract dispute between plaintiff Keith Kent, a logger, and Gladys Drought regarding the logging of timber on Ms. Drought's property located in Albion, New York.[1] Plaintiff brought this action on July 30, 2008, against New York State Police Investigator Michael Notto and New York State Department of Environmental Conservation ("DEC") Investigator Richard Thomas, seeking money damages pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of his rights under the Fourth and Fourteenth Amendments (*see* Item 1). Defendants have moved for summary judgment dismissing the complaint (Item 12).

---

[1] There is a related case pending in this court, Civ. No. 08-CV-414, in which plaintiff has alleged various federal and state law claims against the Orleans County District Attorney, Ms. Drought, and her family members.

For the reasons that follow, defendants' motion is granted.

## BACKGROUND AND FACTS[2]

On January 30, 2006, plaintiff entered into a contract with Gladys Drought ("Drought") for the sale of timber on her property in Albion, New York (Item 14, ¶ 5). The contract specified plaintiff would cut 79 "sawtimber" trees for $11,000 and "[c]ull trees to be cut at Buyers [sic] discretion Pallet and Firewood value only." (Item 21, Exh. A).

On February 25, 2006 New York State Trooper Benjamin Litfin ("Litfin") responded to a complaint made by Drought's daughter, Sharon Leo ("Leo"), regarding trees allegedly stolen by plaintiff (Item 15, Exh. A, p. 2). In the Incident Report, Litfin stated that Leo and Drought's brother, Edward Stymus ("Stymus"), told him plaintiff had agreed to cut 79 trees, but "when they checked the property they discovered Kent had cut approximately 188 trees . . . and was in the process of removing them." *Id.* Litfin obtained a sworn statement from Drought, in which she stated that she asked Kent to stop logging on February 20 and to leave the cut trees so she could have someone come to assess their value. *Id.,* p. 12. She stated Kent later returned to her property and removed the logs. *Id.*

With this information, Litfin contacted Investigator Notto of the New York State Police, who initiated a criminal investigation (Item 15, Exh. A, p. 2). He also obtained a sworn statement from Stymus affirming Leo's report that plaintiff cut 188 trees. *Id.,* p. 13. The same day, Notto was contacted by Patrick Balkin ("Balkin") who stated that he was the plaintiff's attorney. *Id.,* p. 2. Notto informed Balkin of the "nature of the complaint

---

[2]The factual summary is taken from the parties' statements of undisputed facts pursuant to Local Rule 56.1 (Items 14, 21), the declarations of the defendants with accompanying exhibits (Items 15, 16), and the exhibits submitted by plaintiff in opposition to the motion (Item 21, Exhs. A - H).

-2-

and . . . nothing could go further until an independent forester could evaluate the property." *Id.* Later, plaintiff called Notto and told him the additional trees were covered by the contract and he planned on paying Drought the $11,000 specified by the contract. *Id.,* p. 3. According to the Incident Report, "Kent was advised that a criminal investigation had been initiated and not to go onto the Drought property or have contact with her until such time as the complaint could be resolved." *Id.*

On February 28, 2006, Leo contacted Notto via e-mail (Item 15, Exh. A, p. 81). She stated, "I found out yesterday, after a review of the contract by Dave Colligan, the forestry lawyer in Buffalo, that there is really no recourse for my mother. . . . If there is any other way to go after Kent, I'm willing to keep at it." *Id.*

On March 3, 2006, Notto contacted the DEC to assist with the investigation (Item 15, Exh. A, p. 26). DEC Investigator Thomas was assigned to the case (Item 15, ¶ 12). Thomas and Notto met on March 7, 2006 and Thomas advised that his department would provide a forester to evaluate the number and value of trees cut and removed from Drought's property. *Id.,* ¶ 13. Notto and Thomas toured Drought's property on March 8, 2006. *Id.,* ¶ 14. They re-interviewed Drought and Stymus and observed that the property was marked with "no trespassing" signs. *Id.,* ¶¶ 14, 15. Drought stated she had not given plaintiff permission to be on her property prior to the contract, but because the trees were already marked before the contract, she stated he must have trespassed. *Id.,* ¶ 15.

DEC Foresters Mark Gooding and Patrick Marren, accompanied by Thomas, evaluated the Drought property on March 15, 2006 (Item 16, ¶ 16). They conducted a field investigation and inventory of all freshly-cut stumps. *Id.* The foresters determined that 201

trees were removed and characterized 198 of those trees as "sawtimber" (Item 15, Exh. A, p. 41). They estimated the value of the cut trees between $23,000 and $26,000. *Id.*

Following the receipt of the DEC foresters' report, Notto and Thomas consulted with Joseph Cardone ("Cardone"), the District Attorney of Orleans County (Item 16, ¶ 19). Cardone indicated that there was probable cause for the plaintiff's arrest. *Id.* Accordingly, on May 23, 2006, plaintiff was charged with one count of Grand Larceny in the Third Degree (N.Y. Penal Law § 155.35) and 100 counts of Unlawful Cutting of Trees Without Property Owners Consent (N.Y. Envtl. Conserv. § 9-1501). *Id.* Notto arranged for the plaintiff to surrender himself on May 23, 2006 (Item 15, ¶ 20). Plaintiff was processed, arraigned, and released on his own recognizance. *Id.*

The Grand Jury declined to indict plaintiff on either of the charges. However, plaintiff was charged with Tampering With Physical Evidence (N.Y. Penal Law § 215.40) (Item 15, ¶ 21). This charge was later dismissed by the Hon. James P. Punch, Orleans County Court, based on the insufficiency of the evidence and in the interests of justice. *Id.*

Plaintiff commenced this action on July 30, 2008, seeking money damages for false arrest and malicious prosecution (Item 1). Defendants filed an answer on October 2, 2008 (Item 4). They filed the motion for summary judgment on August 5, 2009 (Item 12), and plaintiff filed a response to the motion on September 18, 2009 (Item 21). Defendants filed a reply on October 8, 2009 (Item 22). The court determined that oral argument was unnecessary. For the reasons that follow, the motion for summary judgment is granted, and the complaint is dismissed.

**DISCUSSION**

The standard for summary judgment is well established. Pursuant to Fed. R. Civ. P. 56(c), a district court must grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris,* 550 U.S. 372, 380 (2007), quoting *Anderson*, 477 U.S. at 247-48.

It is the initial burden of the party moving for summary judgment to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004). When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e)(2). In raising a triable issue of fact, the nonmovant carries only a "limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue

for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993)).

The Fourth Amendment right to be free from unreasonable seizures "includes the right to be free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). Under New York law, a plaintiff must establish the following four elements to prevail on a claim of false arrest: (1) defendant intended to confine plaintiff; (2) plaintiff was aware of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). Here, for the purposes of this motion, defendants do not dispute the first three elements (Item 13, p. 4). Thus, the only issue is whether defendants' arrest of plaintiff was privileged or justified.

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," *i.e.,* it is "objective rather than subjective." *Jaegly,* 439 F.3d at 153-54. "[T]he existence of probable cause is an absolute defense to a false arrest claim," *id.* at 152, and the inquiry for the court is not whether plaintiff was in fact guilty of a violation of the New York statutes, but rather whether there was probable cause to believe that he was.

Here, the facts available to defendants immediately before plaintiff's arrest demonstrate that they reasonably believed plaintiff had committed a crime. New York law states "[a] person is guilty of grand larceny in the third degree when he steals property and when the value of the property exceeds three thousand dollars." N.Y. Penal Law § 155.35 (2010). The DEC foresters' evaluation concluded plaintiff had cut 198 "sawtimber" trees when the contract only allowed him to cut 79. Thus, the defendants reasonably believed the extra trees were illegally cut, and their removal from the Drought property was larceny. The foresters estimated the value of these extra cut trees to be between $23,000 and $26,000, well above the $3,000 threshold. The facts available to the defendants at the time of the arrest reasonably established the elements of larceny under New York law.

New York law also provides that "[n]o person shall cut, pull or dig up for the purpose of removal, injure or destroy or cause to be so removed, injured or destroyed, any tree on the lands of another without consent of the owner." N.Y. Envtl. Conserv. Law § 9-1501 (2005). As the DEC determined that plaintiff cut 119 trees without the consent of the property owner, the defendants were justified in charging plaintiff with 100 counts of Unlawful Cutting of Trees Without Property Owner's Consent. From these facts, a reasonable person could have concluded that plaintiff had committed these crimes and, indeed, the District Attorney of Orleans County instructed defendants that they had probable cause to arrest him.

Plaintiff argues that defendants "knew that he had a valid contract with Drought." (Item 21, Att. 11, p. 5). Plaintiff cites no record evidence to support this conclusion except the single e-mail written by Leo to Notto in which she wrote, "after a review of the contract by . . . the forestry lawyer in Buffalo, . . . there is really no recourse for my mother."

(Item 15, p. 90). It is unlikely that defendants would reach such a certain legal conclusion regarding the validity of the contract from this statement. However, even granting plaintiff the benefit of a favorable inference, he has failed to raise a genuine issue of material fact. It is clear from the record that defendants did not arrest plaintiff believing the contract to be invalid. On the contrary, defendants' actions in assessing the number of cut trees against the number of trees specified in the contract demonstrates that they acted under the assumption that the contract was valid. The defendants relied on facts which reasonably demonstrated, at the time of the arrest, that plaintiff cut more "sawtimber" trees than authorized by the contract. Additionally, defendants relied on the DEC assessment of the number and quality of trees cut, not on any belief as to the legality of the contract.

Plaintiff further claims that defendants impermissibly relied on "triple hearsay allegations." (Item 21, Att. 11, p. 8). In making this assertion, plaintiff ignores over 60 years of Supreme Court and Second Circuit precedent holding that a police officer's reliance on hearsay evidence is permissible to determine probable cause. As the Supreme Court stated in *Brinegar v. United States*, 338 U.S. 160, 172-73 (1949):

> [T]he so-called distinction [between evidence proving guilt at trial and probable cause for arrest] places a wholly unwarranted emphasis upon the criterion of admissibility in evidence, to prove the accused's guilt, of the facts relied upon to show probable cause. That emphasis, we think, goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search. It approaches requiring . . . proof sufficient to establish guilt in order to substantiate the existence of probable cause. There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.

*See also Draper v. United States*, 358 U.S. 307 (1959) (reaffirming that the use of evidence considered hearsay at a criminal trial is permissible to determine probable cause); *United States v. Heitner*, 149 F.2d 105, 106 (2d Cir. 1945) ("It is well settled that an arrest may be made upon hearsay evidence; and indeed, 'the reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial . . . ."). Plaintiff's assertion that defendants impermissibly relied on hearsay evidence is without merit. Plaintiff points to no other record evidence to support his claim of false arrest. Thus, he has failed to create a genuine issue of material fact for trial.

Plaintiff also alleges a claim of malicious prosecution. The Second Circuit has articulated four elements of this cause of action: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Broughton*, 335 N.E.2d at 314.

Here, the undisputed factual record establishes the first two elements of malicious prosecution. As articulated above, defendants have established that probable cause existed at the time of the arrest. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution . . . ." *Savino*, 331 F.3d at 72. Additionally, even if defendants had not established probable cause for the arrest, plaintiff has failed to present any evidence to support his claim that defendants' actions were motivated by malice or bad faith. Plaintiff claims that defendants based their case on "hearsay, triple hearsay, unqualified opinions, speculation, and prejudicial attitude toward older people." (Item 21, Att. 11, p. 4). Plaintiff also argues that "it was clear to any reasonable person that greed

was a motivating factor in the complaint to the police . . . ." *Id.,* p. 9. Plaintiff does not cite any record evidence to support either of these arguments. "A party must present specific facts to defeat summary judgment, not assumptions and conjecture." *Freidman v. General Motors Corp.,* __F. Supp. 2d__, 2010 WL 2540950, *6 (S.D.N.Y. June 22, 2010). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."). Accordingly, even construing the facts in the light most favorable to the plaintiff, he has failed to present a genuine issue of material fact for trial.

## **CONCLUSION**

For the above reasons, defendants' motion for summary judgment (Item 12) is granted, and plaintiff's complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants.

So ordered.

            _____\s\ John T. Curtin\_\_\_\_\_
              JOHN T. CURTIN
             United States District Judge

Dated: August 9, 2010
p:\opinions\08-571.jul152010